IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


**UPTOWN MARKET, LLC,**

       **Plaintiff,**

v.

**OHIO SECURITY INSURANCE COMPANY,**

       **Defendant.**

3:16-cv-01961-BR

OPINION AND ORDER

**FREDERICK M. MILLARD**
**DOUGLAS M. BRAGG**
419 Fifth St.
Oregon City, OR 97405
(503) 305-7806

       Attorneys for Plaintiff

**JOHN A. BENNETT**
**MATTHEW E. HEDBERG**
Bullivant Houser Bailey PC
300 Pioneer Tower
888 S.W. Fifth Ave.
Portland, OR 97204
(503) 228-6351

       Attorneys for Defendant

**BROWN, Senior Judge.**

    This case comes before the Court on Defendant Ohio Security Insurance Company's Motion (#25) for Summary Judgment or, Alternatively, Motion for Partial Summary Judgment and Plaintiff Uptown Market, LLC's Motion (#27) for Partial Summary Judgment on

1 – OPINION AND ORDER

Defendant's Affirmative Defenses.

For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES as moot** Plaintiff's Motion for Partial Summary Judgment.

**BACKGROUND**

The following facts are taken from the Joint Statement of Agreed Upon Facts (#20) and the materials the parties submitted in support of their Motions. Accordingly, these facts are undisputed unless otherwise noted.

Plaintiff is the sole tenant of a building located at 6620 Southwest Scholls Ferry Road in Tigard, Oregon. The building is owned by Uptown Market Property, LLC (Uptown Property).[1] Plaintiff conducts a beer-brewing and retail-sales business in the leased building.

The obligations and responsibilities of Plaintiff and Uptown Property are set forth in their Lease and include the following relevant provisions: (1) Uptown Property is required to have standard multi-peril insurance covering the building and other improvements, but that insurance does not include Plaintiff's trade fixtures, improvements, and other property on the leased premises; (2) Uptown Property is not liable for injury to "goods, stock, merchandise, or any other property" of Plaintiff and is

---

[1] Although the principal members of Plaintiff and the principal members of Uptown Property are the same individuals, Uptown Property is not named as a party in this case.

required to have its own insurance to cover risks to Plaintiff's property; (3) any improvements, alterations, and other work performed on the property are considered the property of Uptown Property with the exception of Plaintiff's trade fixtures; and (4) Uptown Property is responsible for "structural repairs and maintenance and repairs necessitated by structural disrepair or defects," repair and maintenance of the "foundation of the Building," and repair of "floors, and floor coverings when such repairs are made necessary because of failure of [Uptown Property] to keep the structure in repair."

As noted, Uptown Property is the owner of the building. The loan for purchase of the building is secured by an installment note, and the building is the collateral for the loan. Uptown Property also granted a Deed of Trust to the bank "to all real property" located at 6620 S.W. Scholls Ferry Road. Pursuant to the loan agreement, Uptown Property was required to provide the bank "with evidence of insurance coverage" to ensure that the bank did not have to purchase insurance to protect its own interests in the building.

Plaintiff is a guarantor of the loan on the property, and Plaintiff granted to the bank "a security interest in all property in which [Plaintiff] has an ownership interest which is now or in the future in the possession of [the] [b]ank to secure payment under the [Guaranty] Agreement."

Defendant issued a Commercial Package Insurance Policy to Plaintiff as the named insured for the period of January 22,

3 – OPINION AND ORDER

2014, to January 22, 2015.  Uptown Property is not named as an insured under Defendant's Policy.  On November 18, 2014, a policy-change endorsement added U.S. Bank as a loss payee for business personal property under the Loss Payable Provisions of the Policy.

Subject to its terms, conditions, limitations, and exclusions, Defendant's Policy provides:

> **A.   Coverage**
>
> We will pay for direct physical loss or damage to Covered Property at the premises described in the Declarations [6620 S.W. Scholls Ferry Road] caused by or resulting from any Covered Cause of Loss.

Under the "Building and Personal Property Coverage Form" of the Policy, "**Covered Property**" is described in Section A as "**Building**, meaning the building or structure described in the Declarations," "**Your Business Personal Property** located in or on the building described in the Declarations," and "**Personal Property of Others**."  The "**Property Not Covered**" is listed in Section A.2. of the Policy and includes, among other things, "[f]oundations of buildings, structures, machinery or boilers." Under a Custom Protector Plus Endorsement, "Foundations" is deleted from the "Property Not Covered" under Section A.2. and instead is included within the "Coverage Extensions" of Section A.5. of the Policy.

Under the "Causes of Loss – Special Form" of the Policy, "Covered Causes of Loss" means "Risks Of Direct Physical Loss" unless the loss is excluded.  Section B.1. of the Policy sets out

the following exclusions:

> 1. We will not pay for loss or damages caused directly or indirectly by any of the following. Such loss or damages is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> \* \* \*
>
> **b. Earth Movement**
>
> \* \* \*
>
> (4) Earth sinking (other than sinkhole collapse,) rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.
>
> \* \* \*
>
> **g. Water**
>
> \* \* \*
>
> (4) Water under the ground surface pressing on, or flowing or seeping through:
>
> (a) Foundations, walls, floors or paved surfaces; . . ..

On approximately January 5, 2015, Plaintiff discovered a portion of the concrete floor in the building had "sunk" seven or eight inches. The parties agree the only property owned by Plaintiff that was damaged were "taps at the bar" that do not drain properly. The taps are operational, but the drains are not.

On January 6, 2015, Plaintiff submitted an insurance claim to Defendant under the Policy. On that date an insurance

5 – OPINION AND ORDER

adjuster-representative for Defendant met with Plaintiff about its claim. Defendant subsequently retained Jon Burks, a project engineer with PT&C/LWG Forensic Consulting, to determine the cause of the damage reported by Plaintiff.

On September 4, 2015, Burks inspected the building. On October 7, 2015, Burks issued a report in which he concluded the cracking of the concrete slab-on-grade floor at the building was consistent with long-term and ongoing nonuniform movement of the underlying soils as well as subsequent differential movement of the concrete slab; the concrete floor was built out-of-level, and that condition had been exacerbated by nonuniform movement of the underlying soils; and the cracking and out-of-level concrete floor surface and separations of the counter-bar's laminate and cove base finishes were not the result of a spontaneous or concentrated introduction of moisture into the underlying soil such as that from a recent plumbing leak.

On October 8, 2015, Defendant denied Plaintiff's claim on the basis that there was not any coverage for its loss. Defendant specifically relied on the "Earth Movement Exclusion" of the Policy.

Plaintiff then retained Jeffery Lewis, a structural engineer with West Coast Forensics, to investigate the cause of the damage to the building and to recommend possible repairs. On November 12, 2015, Lewis inspected the premises. On December 13, 2015, Lewis issued his report in which he found significant settlement of the floor slab had occurred with the maximum

settlement located under the walk-in cooler; the cooler had settled with the floor slab and the doors were "racked" even though the cooler had been leveled; a water-supply line had leaked significantly during the month of January 2015, and water usage for the month was approximately 65,000 gallons higher than the previous month's usage; and a plumber reported he could not find a physical break in the main sewage line for the building, but the main line was "sagging badly" and was probably broken. Lewis also concluded the slab damage was directly related to the water leak (*i.e.*, the leaking high-pressure pipe caused underlying soils to erode and to wash away through the failed sewer main line); settlement was responsible for the slab slope in its entirety; and some of the slab cracks were from shrinkage during the original construction, but some of the slab cracks were fresh and associated with the high-pressure water leakage.

On June 21, 2016, Plaintiff filed a complaint against Defendant and another party in Oregon state court. Plaintiff later filed an amended complaint naming only Defendant. On September 30, 2016, Defendant was served with summons and complaint. Plaintiff alleges claims against Defendant for breach of contract and breach of the implied covenant of good faith and fair dealing.

On October 20, 2016, Defendant removed the state-court case to this Court and filed its Answer. Defendant denies Plaintiff's claims and asserts the Policy exclusions as an affirmative defense.

On December 4, 2016, the parties filed their respective Motions for Summary Judgment.

**STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id*. "This burden is not a light one . . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer*

*v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted). A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.*, No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## **DISCUSSION**

Defendant contends it is entitled to summary judgment as to Plaintiff's entire Complaint or, in the alternative, as to Plaintiff's Second Claim for breach of the implied covenant of good faith and fair dealing. Plaintiff, in turn, contends it is entitled to partial summary judgment on Defendant's First

9 – OPINION AND ORDER

Affirmative Defense of Exclusions.

## I. Standards for Insurance Contract Interpretation

Oregon law provides "every contract of insurance shall be construed according to the terms and conditions of the policy." Ore. Rev. Stat. § 742.016. The interpretation of an insurance policy is a question of law, and the court's "task is to determine the intent of the parties." *Bjugan v. State Farm Fire and Cas. Co.*, 969 F. Supp. 2d 1283, 1286 (D. Or. 2013)(citing *Groshong v. Mut. of Enumclaw Ins. Co.*, 329 Or. 303, 307 (1999)). *See also Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469 (1992). The court determines the intention of the parties "based on the terms and conditions of the insurance policy." *Hoffman*, 313 Or. at 469 (citing Or. Rev. Stat. § 742.016).

If the Court concludes the insurance policy "unambiguously expresses the intent to provide coverage or to not provide coverage, the contract language is controlling." *Bjugan*, 969 F. Supp 2d at 1287. *See also Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 67 Or. App. 623, 627 (1984).

The insured has the initial burden to prove that a loss comes within the coverage of the policy. *ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*, 349 Or. 117, 127 (2010). The insurer has the burden of proof to show that the loss is within an exclusion of the policy. *Bjugan,* 969 F. Supp 2d at 1286. The insured has the burden to prove a claim is within an exception to an exclusion. *Emp'r Ins. of Wausau v. Tektronix, Inc.*, 211 Or.

App. 485, 514 (2007), *rev. den.*, 343 Or. 363 (2007).

**II. Defendant's Motion for Summary Judgment**

Defendant contends it is entitled to summary judgment as a matter of law on all of Plaintiff's claims on the grounds that Plaintiff does not have an insurable interest in the damaged property and did not suffer an actual loss to covered property. Defendant also contends Plaintiff's damages claim is barred by the "Earth Movement" exclusion.

Plaintiff, in response, contends it has an insurable interest because it has financial responsibility for the subject property, derives a benefit from the property, and has suffered a financial loss as a result of damage to the property. Plaintiff also contends the Earth Movement Exclusion is ambiguous; the endorsement granting coverage for "foundations" is inconsistent with the Exclusion; and, therefore, the Exclusion does not apply.

    **A. Insurable Interest**

        **1. The Law**

Under Oregon law the extent of an insured's insurable interest is determined at the time of the loss. Oregon Revised Statutes § 742.011 provides:

> **Insurable interest in property.** No policy of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of loss.

Oregon courts have held:

> It is well settled that any one has an insurable interest in property who derives a benefit from its existence or would suffer loss from its

> destruction. It is sufficient to constitute an
> insurable interest in property that the insured is
> so situated with reference to the property that he
> would be liable to loss should it be injured or
> destroyed by the peril against which it is
> insured.

*Bird v. Cent. Mut. Ins. Co.*, 168 Or. 1, 6 (1942). *See also Davtian v. Safeco Ins. Co. of* Oregon, No. 6:13-cv-00516-MC, 2014 WL 12569390, at *3 (D. Or. Mar. 13, 2014). In other words, the insured must have a "direct pecuniary interest in the preservation of the insured property." *Davtian,* 2014 WL 12569390, at *3 (citing *Fenter v. Gen. Acc. Fire & Life Assur. Corp.*, 258 Or. 545, 550 (1971)).

In addition to having an insurable interest, the insured must suffer an actual loss. Any recovery is limited to the actual loss sustained. *Id.* (citing *Transp. Equip. Rentals, Inc. v. Oregon Auto. Ins. Co.*, 257 Or. 288, 295-96 (1970)).

In *Transportation Equipment Rentals* the Oregon Supreme Court held:

> The rule with regard to the lessor-lessee . . .
> relationships is a concomitant of the general rule
> that an insured with only a limited interest in
> the property can recover only to the extent of his
> limited interest.

257 Or. at 301. The court cited with approval the principle that "[i]f the insured has an insurable but only a qualified, partial, or limited interest in the property insured, . . . he may not recover the full value or an amount exceeding his actual interest in the *res*. . . . But the general rule is that the insured is limited in recovery to the value of his actual interest in the property insured." *Id.* (citing 3 *Richards on Insurance* 1613,

12 – OPINION AND ORDER

§ 503).

The terms of a lease between an insured-tenant and the lessor also affects the determination of insurable interest. *Ionian Corp. v. Country Mut. Ins. Corp.*, No. 3:10-cv-00199-HZ, 2015 WL 4628907, at *4 (D. Or. Aug. 3, 2015).

### 2. Analysis

Plaintiff contends it derives a benefit from the existence of the building as the tenant; has suffered a loss as a result of damage to the building; and, therefore, has an insurable interest.

Here it is undisputed that Plaintiff does not own the building where the damage occurred. The building is owned by Uptown Property and leased to Plaintiff to conduct business on the property. Plaintiff derives a benefit from the continued existence of the building and would suffer a loss if the building were destroyed. Plaintiff, however, must have suffered an actual loss for an insurable interest to exist, and any recovery for such loss would be limited to the actual loss sustained.

As noted, pursuant to the terms of the Lease, Uptown Property owns all of the property on the premises with the exception of Plaintiff's "trade fixtures," Uptown Property is responsible for the repair and maintenance of the structure, and Uptown Property is obligated to maintain in full force a multi-peril policy covering the building and other improvements exclusive of Plaintiff's trade fixtures. Plaintiff, as the

tenant, was obligated to obtain insurance coverage only as to its own property, but it was not required to obtain first-party property coverage on the building. Although Plaintiff obtained a policy of insurance from Defendant, Uptown Property was not named as an insured under the Policy.

The parties agree the only damage to property owned by Plaintiff was the damage to its bar taps. Plaintiff, however, seeks damages that include replacement of the foundation and the pouring of a new concrete floor. It is undisputed that Uptown Property owned the concrete slab, foundation, and plumbing of the building that were damaged. Under the terms of the Lease, those repairs are the sole responsibility of Uptown Property as the lessor.

The record does not reflect Plaintiff actually suffered any loss as a result of the damage to the building other than the damage to the bar taps. Plaintiff, however, argues: "At the time of loss, there was the *possibility* that the damage caused would result in financial injury to Plaintiff, in the damage to trade fixtures, damage to the cooler and the resulting impact upon the marketability of Plaintiff's product and Plaintiff's continued business operations." Pl.'s Response at 4 (#32)(emphasis added).

On this record the Court concludes there is not a genuine dispute of material fact as to the damage Plaintiff sustained to its bar taps (although the parties agree "the taps are operational, [but] the drains are not"). The record does not

reflect any evidence of actual loss of business or negative impact on Plaintiff's products or operations as a result of the alleged damage. Accordingly, the Court concludes Plaintiff has not shown actual loss sufficient to constitute an insurable interest.

Plaintiff, nevertheless, contends it has a "financial interest" in the building because, as guarantor of the mortgage, Plaintiff had the obligation to insure the building due to the fact that Uptown Property did not have insurance. Uptown Property, however, was aware the bank "may purchase insurance at [Uptown Property's] expense to protect [the bank's] interest" if Uptown did not provide evidence of insurance to the bank. Thus, Plaintiff's only obligation as guarantor was to guarantee payment of the cost of any insurance that the bank might obtain to protect its own interests if Uptown Property did not obtain such insurance. In other words, Plaintiff was not obligated to obtain first-party property insurance on the building on behalf of Uptown Property. As the parties note, although Plaintiff obtained insurance from Defendant, it did not name Uptown Property or even the bank as an insured. The Court, there, concludes Plaintiff does not have a financial interest in the building that is sufficient to constitute an insurable interest based on its status as a guarantor of the loan.

In summary, the Court concludes Plaintiff has not shown

reflect any evidence of actual loss of business or negative impact on Plaintiff's products or operations as a result of the alleged damage. Accordingly, the Court concludes Plaintiff has not shown actual loss sufficient to constitute an insurable interest.

Plaintiff, nevertheless, contends it has a "financial interest" in the building because, as guarantor of the mortgage, Plaintiff had the obligation to insure the building due to the fact that Uptown Property did not have insurance. Uptown Property, however, was aware the bank "may purchase insurance at [Uptown Property's] expense to protect [the bank's] interest" if Uptown did not provide evidence of insurance to the bank. Thus, Plaintiff's only obligation as guarantor was to guarantee payment of the cost of any insurance that the bank might obtain to protect its own interests if Uptown Property did not obtain such insurance. In other words, Plaintiff was not obligated to obtain first-party property insurance on the building on behalf of Uptown Property. As the parties note, although Plaintiff obtained insurance from Defendant, it did not name Uptown Property or even the bank as an insured. The Court, there, concludes Plaintiff does not have a financial interest in the building that is sufficient to constitute an insurable interest based on its status as a guarantor of the loan.

In summary, the Court concludes Plaintiff has not shown

it suffered any actual loss other than the alleged damage to its own property.  The damages Plaintiff seeks for replacement of the foundation and pouring a new concrete floor are not an insurable interest of the Plaintiff, and, in fact, are the sole responsibility of Uptown Property.

Accordingly, on this record the Court **GRANTS** Defendant's Motion for Summary Judgment and **DISMISSES** Plaintiff's Complaint in it entirety.  The Court also **DENIES as moot** Defendant's Alternative Motion for Partial Summary Judgment against Plaintiff's Second Claim based on the Earth Movement Exclusion.

**III. Plaintiff's Motion for Partial Summary Judgment**

Based on the Court's ruling on Defendant's Motion, Plaintiff's Motion for Partial Summary Judgment against Defendant's Affirmative Defenses is **DENIED as moot**.

<u>**CONCLUSION**</u>

For these reasons the Court **GRANTS** Defendant's Motion (#25) for Summary Judgment, **DENIES as moot** Defendant's Alternative Motion (#25) for Partial Summary Judgment, **DENIES as moot** Plaintiff's Motion (#27) for Partial Summary Judgment on Defendant's Affirmative Defenses, and **DISMISSES** Plaintiff's Complaint **with prejudice**.

IT IS SO ORDERED.

DATED this 8th day of February, 2018.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge